UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ESTATE OF DEAN HENRY HOFFMANN,

    Plaintiff,

 v.                                                      Case No. 24-CV-160

KEVIN A. CARR, JARED HOY, RANDALL HEPP,
YANA PUSICH, DR. KRISTINA DEBLANC,
NATHAN PAC, JOHN DOE #1, and
JOHN DOE #2,

    Defendants.

## ORDER

        On December 20, 2024, the defendants filed a motion for judgment on the pleadings on the first amended complaint, asking the court to dismiss the official capacity claims and Count I under *Monell v. Dept. of Social Servs. of City of New York*, 436 U.S. 658 (1978). (ECF No. 29.) In response, the plaintiff filed a motion to amend/correct the complaint. (ECF No. 32.) In their memorandum of law in support of their motion to amend, the plaintiff stated that shortly after the defendants filed their motion for judgment on the pleadings, the parties held a telephone conference wherein the defendants agreed to allow the plaintiff to file a second amended complaint "to address the alleged deficiencies in Plaintiff's amended complaint." (ECF No. 33 at 2.) According to the defendants, this included the plaintiff's

agreement to dismiss all official capacity claims and the *Monell* liability claim. (ECF No. 39 at 4.)

On February 24, 2025, the defendants filed a motion to partially dismiss the plaintiff's second amended complaint, requesting the court dismiss the purported official capacity claims; the Eighth Amendment claims brought under a theory of supervisor liability against Kevin A. Carr, Jared Hoy, Randall Hepp, Yana Pusich, and Dr. Kristina DeBlanc; and the Wisconsin state law claims because the plaintiff did not comply with the notice requirements under Wis. Stat. § 893.82. This order addresses these motions.

## MOTION TO AMEND THE COMPLAINT (ECF NO. 32)

The plaintiff states that it received the defendants' written consent to amend the complaint, as required by Fed. R. Civ. P. 15(a)(2). (ECF No. 33 at 2.) As such, the court grants the plaintiff's motion to amend the complaint. The second amended complaint (ECF No. 32-1) is now the operative complaint.

## JUDGMENT ON THE PLEADINGS (ECF NO. 29)

Because the plaintiff's second amended complaint supersedes the first amended complaint, which is the subject of the defendants' motion for judgment on the pleadings, the court denies the defendants' motion for judgment on the pleadings as moot.

## MOTION FOR PARTIAL DISMISSAL
## OF THE SECOND AMENDED COMPLAINT (ECF NO. 35)

The defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) asserting that the following claims must be dismissed: the plaintiff's official capacity claims; the claims pursuant to the Eighth Amendment under a theory of supervisory liability against Carr, Hoy, Hepp, Pusich, and DeBlanc; and the claims brought pursuant to Wisconsin State Law. They do not request that the Eighth Amendment claims against Nathan Pac and the two John Doe defendants be dismissed.

1. *Facts*

On March 29, 2023, Hepp implemented a lockdown at Waupun because there had been several incidents of prisoners breaking safety rules. (ECF No. 32-1, ¶¶ 69, 70.) On April 10, 2023, the now-deceased prisoner whose death by suicide is the subject of this lawsuit, Dean Henry Hoffmann, transferred to Waupun. (*Id.*, ¶ 62.) Upon his arrival, the plaintiff states Hoffmann "was never given a psychological exam due to the lockdown restrictions that were in place." (*Id.*, ¶ 72.) Hoffmann also was not receiving his mental health medication. (*Id.*, ¶¶ 73–74.) A little more than a month after his arrival, on approximately May 18, 2023, Hoffmann still had not been seen by psychological services despite Hoffmann "consistently and continuously ask[ing] for medical treatment and []displaying serious symptoms of mental illness, including but not limited to severe anxiety, paranoia, pressured speech, poor judgment." (*Id.*, ¶¶ 77–78.) Finally on June 20, 2023, Hoffmann refused to go back into his cell because he was afraid that his cellmate was stealing his property and that his cellmate would hurt him. (*Id.*, ¶¶ 79–81.) Sergeant Schuett in

3

consultation with Captain Pawylyk placed Hoffmann in the Restricted Housing Unit (RHU) for refusing to lock into his cell. (*Id.*, ¶¶81–85.) The plaintiff asserts that jail staff failed to fill out the proper forms and conduct the proper reviews and evaluations before placing Hoffmann in solitary confinement. (*Id.*, ¶¶ 91–97.)

On June 24, 2023, an unidentified nurse conducted a visual observation of Hoffmann in RHU. (*Id.*, ¶ 98.) Hoffmann had yet to receive a psychological exam. (*Id.*, ¶ 99.) On June 26, 2023, Hoffmann requested his medicine and expressed frustration with the inconsistent manner in which his medication was being administered. (*Id.*, ¶ 100.) Hoffmann also allegedly had been asking (unidentified) staff to see a psychiatrist, telling them he was hearing voices and could not sleep. (*Id.,* ¶ 104.) Hoffmann also told staff that the voices were telling him to kill himself. (*Id.*, ¶ 105.)

On June 27, 2023, Pusich, in her capacity as Security Director, reviewed the report detailing the June 20, 2023, incident which caused Hoffmann to end up in the RHU. (*Id.*, ¶ 108.) In her written review of the incident report, Pusich noted that Hoffmann created "a risk of serious disruption at the facility" and checked the box noting that Hoffmann needed "[p]sychological services input for serious mentally ill inmate." (*Id.*, ¶ 110.) The plaintiff alleges that other than checking the box noting psychological services were necessary, Pusich did not do anything else to ensure that Hoffmann received mental health care. (*Id.*, ¶ 111.)

On June 29, 2023, at approximately 6:21a.m., a guard failed to obtain a visual of Hoffmann in his cell. (*Id.*, ¶ 115.) At 6:45a.m., Hoffmann was found dead in his cell. (*Id.*, ¶ 116.)

At some point on June 26, 2023, Dr. DeBlanc had an interaction with Hoffmann, but the second amended complaint does not provide details regarding the nature of this interaction. (ECF No. 32-1, ¶ 128.) The plaintiff states that Dr. DeBlanc did not write a report regarding her June 26 interaction with Hoffmann until three days after Hoffmann was found dead. (*Id.*) The plaintiff also asserts that Dr. DeBlanc "was aware that inmates at Waupun were not receiving proper medical care, including psychological services, yet did nothing to ensure that inmates were receiving the medical care they needed." (*Id.*, ¶¶ 43–44.)

2. *Legal Standard*

"To survive a motion to dismiss under Rule 12(b)(6), a complaint must 'state a claim for relief that is plausible on its face.' . . . Factual allegations are accepted as true at the pleading stage, but 'allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion.'" *Adams v. City of Indianapolis,* 742 F.3d 720, 728–29 (7th Cir. 2014) (citations omitted). The allegations must "permit the court to infer more than the mere possibility of misconduct." *Olson v. Champaign Cty., Ill.*, 784 F.3d 1093, 1099 (7th Cir. 2015) (citations omitted). At this stage, the court should not ask whether the allegations actually occurred but instead should ask whether they could occur. *Id.*

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under color of state law. *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)).

### 2.1. Official Capacity Claims

The defendants state that the plaintiff brings claims against them in their individual and official capacities. (ECF No. 32-1, caption, ¶ 69.) In response, the plaintiff states that they intended to merely allege that the defendants "were acting under the color of state law and in the scope of their employment at the time of the alleged wrongful acts." (ECF No. 38 at 9.) The plaintiff did not intend to make claims against the defendants in their official capacities. (*Id.*) As such, the court will grant the motion to dismiss as to the official capacity claims. Nothing in the second amended complaint shall be seen as bringing an official capacity claim. The plaintiff should take care when using terms such as "official capacity," which typically denote a specific type of claim under § 1983.

### 2.2 Supervisor Liability Claims

The defendants assert that plaintiff failed to allege Eighth Amendment claims against Carr, Hoy, Hepp, Pusich, and Dr. DeBlanc because they cannot be held liable under a theory of supervisor liability. In the second amended complaint, plaintiff asserts two sets of purported supervisor liability claims:claims against Carr, Hoy, and Hepp for instituting and/or permitting a lockdown, which restricted

6

prisoners' access to mental health resources and care and creating unsafe conditions, (ECF No. 32-1, ¶¶ 16–20; 64–65, 140–142); and claims against Pusich and Dr. DeBlanc for failing to ensure that Hoffmann received appropriate psychological care in the days before his suicide, (*Id.* ¶¶ 108–111, 128).

### 2.2.1 Hepp, Carr, and Hoy

The plaintiff asserts that because Hepp was responsible for the day-to-day operations at Waupun, he was also responsible to ensure that Waupun's staff was appropriately supervised. (ECF No. 32-1, ¶ 64.) Similarly, plaintiff alleges that Carr and Hoy, as Hepp's supervisors, were responsible for ensuring that Hepp "was properly doing his job, and that the inmates under his control and supervision were properly cared for." (*Id.*, ¶ 65.) The plaintiff also alleges that Hepp, Carr, and Hoy, "had actual or constructive knowledge that their subordinates were engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury." (*Id.*, ¶ 142.) In other words, Hepp, Carr, and Hoy, had policies, procedures, and/or customs when dealing with overcrowding and understaffing, including implementing a lockdown, that they knew caused poor prison conditions and rendered medical care, including psychological care, unavailable.

Section 1983 "creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional violation." *Hildebrant v. Ill. Dep't of Nat. Res.*, 347 F.3d 1014, 1039 (7th Cir. 2003) (quoting *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996)). Because § 1983 makes public employees liable "for their own

7

misdeeds but not for anyone else's," *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir.2009), a plaintiff must specifically allege what each individual defendant did (or did not do) to violate his constitutional rights. "The doctrine of *respondeat superior* does not apply to § 1983 actions; thus to be held individually liable, a defendant must be personally responsible for the deprivation of a constitutional right." *Sanville v. McCaughtry*, 266 F.3d 724, 741 (7th Cir. 2001) (quotations omitted). "A defendant will be deemed to have sufficient personal responsibility if he directed the conduct causing the constitutional violation, or if it occurred with his knowledge or consent." *Id.* (quotation omitted). However, the individual defendant "does not have to have participated directly in the deprivation." *Id.* Liability may be found "where an official knows about unconstitutional conduct and facilitates, approves, condones, or 'turns a blind eye.'" *Perez v. Fenogolio*, 792 F.3d 768, 781 (7th Cir. 2015) (quoting *Vance*, 97 F.3d at 992–93).

The plaintiff argues that Hepp, Carr, and Hoy, by implementing certain policies and procedures as well as having knowledge, generally, about unconstitutional staff behavior and systemic deficiencies, makes them liable under a theory of supervisor liability for the Eighth Amendment violations against Hoffmann. However, having general knowledge about unconstitutional conditions and systemic deficiencies is insufficient to hold them personally liable for Hoffmann's death by suicide. *See Ollison v. Gossett*, Case No. 23-1125, 2025 WL 6520382, at *5 (7th Cir. May 7, 2025) (quoting *Steidl v. Gramley*, 151 F.3d 739 (7th Cir. 1998) ("[W]here the plaintiff alleged that the warden was 'ultimately in charge

8

of, and responsible for, all day-to-day operations,' . . . such a general allegation fail[s] to state a claim of systemic deficiencies."). The plaintiff must allege that Hepp, Carr, and Hoy knew the impact their policies and the actions of their staff had upon (or would have upon) Hoffmann and then disregarded that risk. n*Id.* at \*7("[A] public officer, or a private person acting in the name of the state, can be held responsible for allowing systemic deficiencies to fester, if the deficiencies, left unchanged, *will foreseeably result* in injury *to the plaintiff*.") (emphasis added).

While the plaintiff cites both *Perez* (specifically discussing *Gentry v. Duckworth*, 65 F.3d 555 (7th Cir. 1995)), and *Sanville* in support of their argument that broad general knowledge of unconstitutional conditions and systemic deficiencies is sufficient, their application of these cases misses one key element—in all three of those cases, the plaintiff communicated with the wardens or supervisors about their individual and specific issues or that the wardens or supervisors actively knew about the plaintiff's specific issues. In *Perez*, while applying *Gentry*, the Seventh Circuit Court of Appeals noted that the plaintiff's complaint "alleges that the named defendants each obtained actual knowledge of [the plaintiff's] objectively serious medical condition and inadequate medical care through [the plaintiff's] coherent and highly detailed grievances and other correspondences." *Perez*, 792 F.3d at 782. The Court further noted that this was similar to the plaintiff in *Gentry*, who also alerted supervisory staff by sending many letters describing his issues. *Id.* In *Sanville*, the Seventh Circuit declined to find that the plaintiff sufficiently alleged that the wardens could be held liable because merely alleging a

9

systemic failure by the staff did not amount to alleging that the wardens "turned a blind eye to any particular conduct" of the staff defendants. *Sanville*, 266 F.3d at 741. Because the plaintiff's second amended complaint does not allege that Hepp, Carr, or Hoy had knowledge of Hoffmann's specific situation, it does not state an Eighth Amendment claim under a theory of supervisor liability. The Eighth Amendment claims against Hepp, Carr, and Hoy are dismissed.

2.2.2 Pusich and Dr. DeBlanc

The plaintiff asserts that Pusich should be held liable under a theory of supervisor liability because all she did was check a box stating that psychological services were required. According to the plaintiff, Pusich should have followed up and ensured that Hoffmann got the needed mental health care. These allegations do not indicate whether Pusich was aware that staff were ignoring Hoffmann's significant mental health needs or that she knew Hoffmann was not receiving mental health services. At most the allegations state that Pusich was aware that Hoffmann needed mental health care at that time. "Public officials do not have a free-floating obligation to put things to rights . . . . Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job." *Burks*, 555 F.3d at 595. Pusich, as Security Director, did not have the responsibility to ensure that he received the mental health care she recommended. Unless the plaintiff alleges that she knew that staff was acting with deliberate indifference in not providing mental health care or ignoring her recommendation but did nothing, the plaintiff does not

10

state a claim. In short, the plaintiff's second amended complaint does not allege enough to state a supervisory claim against Pusich.

Similarly, the second amended complaint also does not allege enough to hold Dr. DeBlanc liable under a theory of supervisor liability. At most, the second amended complaint states that at some point on June 26, 2023, before Hoffmann's death, Dr. DeBlanc interacted with Hoffmann. There are no allegations regarding the nature of this interaction; whether Hoffmann requested care or services from Dr. DeBlanc; whether Hoffmann complained to her about his issues; or whether Dr. DeBlanc examined him. The plaintiff alleges only that Dr. DeBlanc did not file her report about interacting with Hoffmann until three days after his death, and that Dr. DeBlanc, generally, was aware that prisoners were not receiving adequate mental health services. As stated above, general knowledge about potential unconstitutional conditions or systemic deficiencies is insufficient. The plaintiff needed to allege that Dr. DeBlanc was aware of specific violations of Hoffmann's constitutional rights or that because of the deficiencies injury *to Hoffmann* was foreseeable. Simply alleging that she interacted with Hoffmann before his death without more detail does not establish that she had this knowledge. Also, it is unclear from the second amended complaint what impact filing her report three days after his death had. The allegation does not inform a claim of supervisor liability, nor does it sufficiently allege personal liability for a deliberate indifference claim against Dr. DeBlanc. While the Federal Rule of Civil Procedure 8(a)(2) requires that a plaintiff give only "a short and plain statement of the claim," and

11

"specific facts are not necessary," the allegations still have to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 55 (internal citations omitted)). The plaintiff's allegations of supervisor liability are insufficient and the supervisor liability claims against Pusich and Dr. DeBlanc are dismissed.

        2.3 Wisconsin State Law Claims

The plaintiff concedes that they did not timely file a notice of claim with the Wisconsin Attorney General for all but their count of Gross Negligence (Count II), which they now contend is a state law medical malpractice claim. As such, all remaining state law claims except for Count II will be dismissed.

As for Count II, the plaintiff argues that the Wisconsin state law notice statute, Wis. Stat. § 893.82(5m) provides an exception to the notice requirement for medical malpractice claims. Because the second amended complaint alleges that the defendants owed a duty to provide reasonable medical care, and they breached that duty, the plaintiff argues they have stated a medical malpractice claim. (ECF No. 32-1, ¶ 153.)

Count II names all defendants, but only one of those defendants is a medical professional—Dr. DeBlanc. "Non-doctors may not be sued for medical malpractice for the purposes of the notice statute." *Tackett v. Jess*, 853 Fed. App'x 11, 14 (7th Cir. 2021). As such, Count II as to every defendant except Dr. DeBlanc is dismissed.

In the case of Dr. DeBlanc, the defendants argue that she is only a "psychological associate," so the exception also does not apply to her. The

12

defendants do not explain why having "associate" in one's job title means that Dr. DeBlanc is not considered a doctor in this instance. Regardless, because the court dismissed the only federal claim against Dr. DeBlanc, it declines to take supplemental jurisdiction over the state law claim against her. *See* 28 U.S.C. §1367(c); *Bailey v. City of Chicago*, 779 F.3d 689, 696 (7th Cir. 2015).

## CONCLUSION

The court grants the plaintiff's motion for leave to amend the complaint, and the second amended complaint is now the operative complaint. Because the first amended complaint is no longer the applicable complaint, the court denies the defendants' motion for judgment on the pleadings as moot. The court grants the defendants' partial motion to dismiss. The Eighth Amendment supervisor liability claims against Hepp, Carr, Hoy, Pusich, and Dr. DeBlanc are dismissed. All the state law tort claims are dismissed because the defendants did not comply with the Wisconsin state law notice statute. Because there are no remaining claims against Hepp, Carr, Hoy, Pusich, and Dr. DeBlanc, they are dismissed from the case. The only remaining claim is the Eighth Amendment claim against Nathan Pac and the two John Doe officers. The court will set a scheduling conference to reset the remaining deadlines..

**THEREFORE, IT IS ORDERED** that the plaintiff's motion for leave to amend the complaint (ECF No. 32) is **GRANTED**. The second amended complaint (ECF No. 32-1) is now the operative complaint.

**IT IS FURTHER ORDERED** that the defendants' motion for judgment on the pleadings (ECF No. 29) is **DENIED as moot**.

**IT IS FURTHER ORDERED** that the defendants' motion to partially dismiss the plaintiff's second amended complaint (ECF No. 35) is **GRANTED**. To the extent the second amended complaint brings official capacity claims, they are **DISMISSED**. The Eighth Amendment claims under a theory of supervisor liability against Kevin A. Carr, Jared Hoy, Randall Hepp, Yana Pusich, and Dr. Kristina DeBlanc are **DIMISSED**. The Wisconsin state law tort claims are **DISMISSED**. Because there are no remaining claims against Carr, Hoy, Hepp, Pusich, and Dr. DeBlanc, they are **DISMISSED**.

Dated at Milwaukee, Wisconsin this 9th day of May, 2025.

BY THE COURT:

_____
NANCY JOSEPH
United States Magistrate Judge