UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ESTATE OF DEAN HENRY HOFFMANN,

    Plaintiff,

v.                                                            Case No. 24-CV-160

KEVIN A. CARR, JARED HOY, RANDALL HEPP,
YANA PUSICH, DR. KRISTINA DEBLANC,
NATHAN PAC, JOHN DOE #1, and
JOHN DOE #2,

    Defendants.

## DECISION AND ORDER

On December 20, 2024, Defendants filed a motion for judgment on the pleadings on the first amended complaint, asking the court to dismiss the official capacity claims and Count I under *Monell v. Dept. of Social Servs. of City of New York*, 436 U.S. 658 (1978). (Docket # 29.) In response, Plaintiff filed a motion to amend/correct the complaint. (Docket # 32.) In their memorandum of law in support of their motion to amend, Plaintiff stated that shortly after Defendants filed their motion for judgment on the pleadings, the parties held a telephone conference wherein Defendants agreed to allow Plaintiff to file a second amended complaint "to address the alleged deficiencies in Plaintiff's amended complaint." (Docket # 33 at 2.) According to Defendants, this included Plaintiff's agreement to dismiss all official capacity claims and the *Monell* liability claim. (Docket # 39 at 4.)

On February 24, 2025, Defendants filed a motion to partially dismiss Plaintiff's second amended complaint, requesting the court dismiss the purported official capacity claims; the Eighth Amendment claims brought under a theory of supervisor liability against Kevin A.

Carr, Jared Hoy, Randall Hepp, Yana Pusich, and Dr. Kristina DeBlanc; and the Wisconsin state law claims because Plaintiff did not comply with the notice requirements under Wis. Stat. § 893.82. This order addresses these motions.

### MOTION TO AMEND THE COMPLAINT (Docket # 32)

Plaintiff states that it received Defendants' written consent to amend the complaint, as required by Fed. R. Civ. P. 15(a)(2). (Docket # 33 at 2.) As such, the court grants Plaintiff's motion to amend the complaint. The second amended complaint (Docket # 32-1) is now the operative complaint.

### MOTION FOR JUDGMENT ON THE PLEADINGS (Docket # 29)

Because Plaintiff's second amended complaint supersedes the first amended complaint, which is the subject of Defendants' motion for judgment on the pleadings, the court denies Defendants' motion for judgment on the pleadings as moot.

### MOTION FOR PARTIAL DISMISSAL
### OF THE SECOND AMENDED COMPLAINT (Docket # 35)

Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) asserting that the following claims must be dismissed: Plaintiff's official capacity claims; the claims pursuant to the Eighth Amendment under a theory of supervisory liability against Carr, Hoy, Hepp, Pusich, and DeBlanc; and the claims brought pursuant to Wisconsin state law. They do not request that the Eighth Amendment claims against Nathan Pac and the two John Doe defendants be dismissed.

    1.    *Facts*

On March 29, 2023, Hepp implemented a lockdown at Waupun because there had been several incidents of prisoners breaking safety rules. (Docket # 32-1, ¶¶ 69, 70.) On April

2

10, 2023, the now-deceased prisoner whose death by suicide is the subject of this lawsuit, Dean Henry Hoffmann, transferred to Waupun. (*Id.*, ¶ 62.) Upon his arrival, Plaintiff states Hoffmann "was never given a psychological exam due to the lockdown restrictions that were in place." (*Id.*, ¶ 72.) Hoffmann also was not receiving his mental health medication. (*Id.*, ¶¶ 73–74.) A little more than a month after his arrival, on approximately May 18, 2023, Hoffmann still had not been seen by psychological services despite Hoffmann "consistently and continuously ask[ing] for medical treatment and []displaying serious symptoms of mental illness, including but not limited to severe anxiety, paranoia, pressured speech, poor judgment." (*Id.*, ¶¶ 77–78.) Finally, on June 20, 2023, Hoffmann refused to go back into his cell because he was afraid that his cellmate was stealing his property and that his cellmate would hurt him. (*Id.*, ¶¶ 79–81.) Sergeant Schuett, in consultation with Captain Pawylyk, placed Hoffmann in the Restricted Housing Unit ("RHU") for refusing to lock into his cell. (*Id.*, ¶¶ 81–85.) Plaintiff asserts that jail staff failed to fill out the proper forms and conduct the proper reviews and evaluations before placing Hoffmann in solitary confinement. (*Id.*, ¶¶ 91–97.)

On June 24, 2023, an unidentified nurse conducted a visual observation of Hoffmann in RHU. (*Id.*, ¶ 98.) Hoffmann had yet to receive a psychological exam. (*Id.*, ¶ 99.) On June 26, 2023, Hoffmann requested his medicine and expressed frustration with the inconsistent manner in which his medication was being administered. (*Id.*, ¶ 100.) Hoffmann also allegedly had been asking (unidentified) staff to see a psychiatrist, telling them he was hearing voices and could not sleep. (*Id.,* ¶ 104.) Hoffmann also told staff that the voices were telling him to kill himself. (*Id.*, ¶ 105.)

On June 27, 2023, Pusich, in her capacity as Security Director, reviewed the report detailing the June 20, 2023, incident which caused Hoffmann to end up in the RHU. (*Id.*, ¶ 108.) In her written review of the incident report, Pusich noted that Hoffmann created "a risk of serious disruption at the facility" and checked the box noting that Hoffmann needed "[p]sychological services input for serious mentally ill inmate." (*Id.*, ¶ 110.) Plaintiff alleges that other than checking the box noting psychological services were necessary, Pusich did not do anything else to ensure that Hoffmann received mental health care. (*Id.*, ¶ 111.)

On June 29, 2023, at approximately 6:21 a.m., a guard failed to obtain a visual of Hoffmann in his cell. (*Id.*, ¶ 115.) That same day at 6:45 a.m., Hoffmann was found dead in his cell. (*Id.*, ¶ 116.)

At some point on June 26, 2023, Dr. DeBlanc had an interaction with Hoffmann, but the second amended complaint does not provide details regarding the nature of this interaction. (*Id.*, ¶ 128.) Plaintiff states that Dr. DeBlanc did not write a report regarding her June 26 interaction with Hoffmann until three days after Hoffmann was found dead. (*Id.*) Plaintiff also asserts that Dr. DeBlanc "was aware that inmates at Waupun were not receiving proper medical care, including psychological services, yet did nothing to ensure that inmates were receiving the medical care they needed." (*Id.*, ¶¶ 43–44.)

2.     *Legal Standard*

"To survive a motion to dismiss under Rule 12(b)(6), a complaint must 'state a claim for relief that is plausible on its face.' . . . Factual allegations are accepted as true at the pleading stage, but 'allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion.'" *Adams v. Cty. of Indianapolis,* 742 F.3d 720, 728–29 (7th Cir. 2014) (citations omitted). The allegations must "permit the court to infer more than the mere

4

possibility of misconduct." *Olson v. Champaign Cty., Ill.*, 784 F.3d 1093, 1099 (7th Cir. 2015) (citations omitted). At this stage, the court should not ask whether the allegations actually occurred but instead should ask whether they could occur. *Id.*

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under color of state law. *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)).

### 3. Analysis

#### 3.1 Official Capacity Claims

Defendants state that Plaintiff brings claims against them in their individual and official capacities. (Docket # 32-1, caption, ¶ 69.) In response, Plaintiff states that they intended to merely allege that Defendants "were acting under the color of state law and in the scope of their employment at the time of the alleged wrongful acts." (Docket # 38 at 9.) Plaintiff did not intend to make claims against Defendants in their official capacities. (*Id.*) As such, the court will grant the motion to dismiss as to the official capacity claims. Nothing in the second amended complaint shall be seen as bringing an official capacity claim. Plaintiff should take care when using terms such as "official capacity," which typically denote a specific type of claim under § 1983.

#### 3.2 Supervisor Liability Claims

Defendants assert that Plaintiff failed to allege Eighth Amendment claims against Carr, Hoy, Hepp, Pusich, and Dr. DeBlanc because they cannot be held liable under a theory of supervisor liability. In the second amended complaint, Plaintiff asserts two sets of

purported supervisor liability claims: (1) claims against Carr, Hoy, and Hepp for instituting and/or permitting a lockdown, which restricted prisoners' access to mental health resources and care and creating unsafe conditions (Docket # 32-1, ¶¶ 16–20; 64–65, 140–142) and (2) claims against Pusich and Dr. DeBlanc for failing to ensure that Hoffmann received appropriate psychological care in the days before his suicide (*Id.* ¶¶ 108–111, 128).

### 3.2.1 Hepp, Carr, and Hoy

A prison official violates the Eighth Amendment when he is deliberately indifferent to an inmate's serious medical condition. *Petties v. Carter*, 836 F.3d 722, 727–28 (7th Cir. 2016). The Seventh Circuit recently addressed the question of supervisor liability in the context of a deliberate indifference claim. *See Ollison v. Gossett*, -- F.4d --, 2025 WL 1318362 (7th Cir. May 7, 2025). In *Ollison*, prior to his incarceration at the Illinois River Correctional Center ("IRCC"), Ollison was diagnosed with and treated for kidney disease. *Id.* at *1. When he came to the IRCC in January 2012, Ollison informed intake personnel about his kidney conditions and his intake laboratory testing confirmed it. *Id.* Throughout his time at IRCC, his kidney disease went untreated and progressed. *Id.* By January 2014, Ollison was hospitalized and diagnosed with acute renal failure. *Id.* at *2.

During the relevant period, the IRCC had two wardens. Nicholson was warden when Ollison arrived at IRCC in January 2012. Gossett took over as warden in approximately September 2013. Ollison sued both Nicholson and Gossett alleging, amongst other things, that they were deliberately indifferent to his serious medical needs in violation of his Eighth and Fourteenth Amendment rights. *Id.* Nicholson moved to dismiss Ollison's complaint for failure to state a claim, which the district court granted. *Id.*

6

In addressing the dismissal of the claim against Nicholson, the court of appeals explained that there are two categories of claims for deliberate indifference to medical needs. First, there are "claims of isolated instances of indifference to a particular inmate's medical needs." *Id.* at *3. These cases have as their "touchstone the *personal* responsbility of the defendant supervisor because the doctrine of respondeat superior does not apply to § 1983 actions." *Id.* (emphasis in original). Thus, "the supervisory official must have known of, facilitated, approved, condoned, or turned a blind eye to his subordinates' activity, although he need not have directly participated." *Id.* The court of appeals gives as an example an inmate with a serious injury who submitted a series of grievances that were rejected or ignored, then wrote directly to the warden and received no response. *Id.* (citing *Perez v. Fenoglio*, 792 F.3d 768 (7th Cir. 2015)).

The second category of claims involve systemic deficiencies at the prison's health care facility that rendered the medical treatment constitutionally inadequate for all inmates. *Id.* While senior prison officials may be liable for systemic constitutional violations, a warden's general responsibility to supervise prison operations is insufficient to establish personal liability for systemic deficiencies. *Id.* at *4. Rather, to prevail on a systemic deficiency claim, "the plaintiff must demonstrate that 'there are such systemic and gross deficiencies in staffing, facilities, equipment, or procedures that the inmate population is effectively denied access to adequate medical care.'" *Id.* (quoting *Wellman v. Faulkner*, 715 F.2d 269, 272 (7th Cir. 1983)). A plaintiff must further prove that the wardens knew of and disregarded a substantial risk of harm. *Id.*

Ollison alleged that Nicholson was "aware of, facilitated, and/or turned a blind eye to the deficient practices which ultimately resulted in injury to Mr. OLLISON." *Id.* at *5. He

7

further alleged that Nicholson was responsible for the IRCC's overall operation. *Id.* Analyzing Ollison's claim against Nicholson under the second category of claims, the court of appeals concluded that Ollison "alleges no specific deficiencies in the IRCC's health care system from which deliberate indifference on the part of Warden Nicholson can be inferred." *Id.* The court found that a general allegation that Nicholson was responsible for the IRCC's overall operation was insufficient to state a claim of systemic deficiencies. *Id.* Thus, the court concluded that because Ollison's "complaint only contains general allegations and does not put Warden Nicholson on notice of the factual grounds on which his systemic deficiency claim rests, the district court correctly concluded that Mr. Ollison failed to state a claim against Warden Nicholson." *Id.*[1]

Here, as in *Ollison*, Plaintiff's allegations fall under the second category of deliberate indifference cases—allegations of systemic constitutional violations. Unlike in *Ollison*, however, I find that Plaintiff's second amended complaint contains sufficient allegations to state a claim for deliberate indifference to medical needs under *Ollison*'s second category of claims. Plaintiff alleges that at the time of Hoffmann's June 29, 2023 suicide, Waupun had a 53% staff vacancy rate and the prison population had risen to 1,002, which is 120 people over the institution's 882-person capacity. (Am. Compl. ¶¶ 7, 9.) Waupun had also been in an extended lockdown. (*Id.* ¶ 14.) Plaintiff alleges that these conditions (i.e., overcrowding, understaffing, and extended lockdown) caused the inmates to receive inadequate medical

---

[1] It does not appear that Gossett moved to dismiss the systemic deficiency claim against him, as Ollison's complaint against Gossett proceeded through discovery and was dismissed on summary judgment. The court of appeals concluded, however, that with respect to the systemic deficiencies claim against Gossett, the allegations set forth in the complaint were practically identical to those made against Nicholson and therefore were similarly deficient. 2025 WL 1318362, at *5.

8

care, psychological services, food, and water. (*Id.* ¶¶ 11–13.) Plaintiff alleges that when Hoffmann arrived at Waupun, the prison was eleven days into a lockdown and as a result of the lockdown restrictions, he was not given a psychological examination. (*Id.* ¶¶ 68, 72.) Plaintiff alleges that before Hoffmann's death, the State of Wisconsin had requested that the Department of Justice investigate the unsafe and dangerous conditions that existed at Waupun. (*Id.* ¶ 6.) Investigations following Hoffmann's death allegedly revealed that officials at Waupun had known for years about the unsafe and dangerous conditions in the prison but took little action to address the problems. (*Id.* ¶ 15.) And Plaintiff alleges that as a result of the known, unsafe, and dangerous conditions that existed at Waupun, former Warden Hepp and eight other prison employees were arrested and charged in connection with multiple prisoner deaths at Waupun. (*Id.* ¶ 18.)

In *Ollison*, the complaint did nothing more than generally allege that the wardens had overall responsibility for the IRCC and that the wardens were "aware of, facilitated, and/or turned a blind eye" to "deficient practices" at the institution. Here, in contrast, Plaintiff specifically describes the extent of the understaffing, overcrowding, and lockdown occurring at Waupun; alleges that these conditions led to the inadequate administration of health care to the inmates (such as Hoffmann failing to receive a psychological evaluation due to lockdown restrictions); and alleges that Defendants were aware of these inadequacies, as shown by the investigations by the Department of Justice and subsequent criminal charges filed against staff, including Hepp. Given the extreme conditions alleged in Plaintiff's complaint at the time of and prior to Hoffmann's death at Waupun, Plaintiff sufficiently alleges "such systemic and gross deficiencies in staffing, facilities, equipment, or procedures" for one to infer that the inmate population was effectively denied access to adequate medical

9

care and that defendants were aware of these deficiencies. *See Ollison*, 2025 WL 1318362, at *4. And Plaintiff's allegations are certainly sufficient to put Carr, Hoy, and Hepp on notice of the factual grounds on which Plaintiff's systemic deficiency claim rests, which is all that is required at this stage in the proceedings. *See id.* *4–5. For these reasons, Plaintiff's allegations are sufficient to state a deliberate indifference to medical care claim against Hepp, Carr, and Hoy.

### 3.2.2 Pusich and Dr. DeBlanc

Plaintiff asserts that Pusich should be held liable under a theory of supervisor liability because all she did was check a box stating that Hoffmann required psychological services. According to Plaintiff, Pusich should have followed up and ensured that Hoffmann got the needed mental health care.

The claim against Pusich is premised under the first category of deliberate indifference cases under *Ollison*. But Plaintiff fails to allege facts to show that Pusich must have known of, facilitated, approved, condoned, or turned a blind eye to her subordinates' activities. At most, the allegations state that Pusich was aware that Hoffmann needed mental health care at that time. "Public officials do not have a free-floating obligation to put things to rights . . . . Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job." *Burks*, 555 F.3d at 595. Unless Plaintiff alleges that she knew that staff was acting with deliberate indifference by not providing mental health care or ignoring her recommendation and did nothing, Plaintiff does not state a claim. In short, Plaintiff's second amended complaint does not allege enough to state a supervisory claim against Pusich.

Similarly, the claim against Dr. DeBlanc is premised under the first category of deliberate indifference cases under *Ollison*. And similarly, the second amended complaint does

10

not allege enough to hold Dr. DeBlanc liable under a theory of supervisor liability. At most, the second amended complaint states that at some point on June 26, 2023, before Hoffmann's death, Dr. DeBlanc interacted with Hoffmann. There are no allegations regarding the nature of this interaction; whether Hoffmann requested care or services from Dr. DeBlanc; whether Hoffmann complained to her about his issues; or whether Dr. DeBlanc examined him. Plaintiff alleges only that Dr. DeBlanc did not file her report about interacting with Hoffmann until three days after his death, and that Dr. DeBlanc, generally, was aware that prisoners were not receiving adequate mental health services. Simply alleging that she interacted with Hoffmann before his death without more detail does not establish that she must have known of, facilitated, approved, condoned, or turned a blind eye to violations of Hoffman's constitutional rights. While the Federal Rule of Civil Procedure 8(a)(2) requires that a plaintiff give only "a short and plain statement of the claim," and "specific facts are not necessary," the allegations still have to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 55 (internal citations omitted)). Plaintiff also fail to state a deliberate indifference to medical care based on supervisor liability against Dr. DeBlanc.

Accordingly, Plaintiff's claims against Pusich and Dr. DeBlanc are dismissed.

### 2.3 Wisconsin State Law Claims

Plaintiff concedes that they did not timely file a notice of claim with the Wisconsin Attorney General for all but their count of Gross Negligence (Count II), which they now contend is a state law medical malpractice claim. As such, all remaining state law claims except for Count II will be dismissed.

As for Count II, Plaintiff argues that the Wisconsin state law notice statute, Wis. Stat. § 893.82(5m), provides an exception to the notice requirement for medical malpractice claims. Because the second amended complaint alleges that Defendants owed a duty to provide reasonable medical care, and they breached that duty, Plaintiff asserts they have stated a medical malpractice claim. (Docket # 32-1, ¶ 153.)

Count II names all Defendants, but only one of those Defendants is a medical professional—Dr. DeBlanc. "Non-doctors may not be sued for medical malpractice for the purposes of the notice statute." *Tackett v. Jess*, 853 Fed. App'x 11, 14 (7th Cir. 2021). As such, Count II as to every Defendant except Dr. DeBlanc is dismissed.

In the case of Dr. DeBlanc, Defendants argue that she is only a "psychological associate," so the exception also does not apply to her. Defendants do not explain why having "associate" in one's job title means that Dr. DeBlanc is not considered a doctor in this instance. Regardless, because the Court dismissed the only federal claim against Dr. DeBlanc, it declines to take supplemental jurisdiction over the state law claim against her. *See* 28 U.S.C. § 1367(c); *Bailey v. City of Chicago*, 779 F.3d 689, 696 (7th Cir. 2015).

## CONCLUSION

The Court grants Plaintiff's motion for leave to amend the complaint, and the second amended complaint is now the operative complaint. Because the first amended complaint is no longer the applicable complaint, the court denies Defendants' motion for judgment on the pleadings as moot. The court grants in part and denies in part Defendants' partial motion to dismiss. The Eighth Amendment supervisor liability claims against Pusich and Dr. DeBlanc are dismissed; however, the Eighth Amendment supervisor liability claims against Hepp, Carr, and Hoy remain. All the state law tort claims are dismissed because Plaintiff did not

comply with the Wisconsin state law notice statute. Because there are no remaining claims against Pusich and Dr. DeBlanc, they are dismissed from the case. The only remaining claims are the Eighth Amendment claims against Hepp, Carr, Hoy, Nathan Pac and the two John Doe officers. The court will set a scheduling conference to reset the remaining deadlines.

**THEREFORE, IT IS ORDERED** that Plaintiff's motion for leave to amend the complaint (Docket # 32) is **GRANTED**. The second amended complaint (Docket # 32-1) is now the operative complaint.

**IT IS FURTHER ORDERED** that Defendants' motion for judgment on the pleadings (Docket # 29) is **DENIED as moot**.

**IT IS FURTHER ORDERED** that Defendants' motion to partially dismiss Plaintiff's second amended complaint (Docket # 35) is **GRANTED IN PART AND DENIED IN PART**. To the extent the second amended complaint brings official capacity claims, they are **DISMISSED**. The Eighth Amendment claims under a theory of supervisor liability against Yana Pusich and Dr. Kristina DeBlanc are **DISMISSED**. Because there are no remaining claims against Pusich and Dr. DeBlanc, they are **DISMISSED**.

Defendants' motion to dismiss the Eighth Amendment claims under a theory of supervisor liability against Hepp, Carr, and Hoy is **DENIED**. These claims will go forward.

Finally, the Wisconsin state law tort claims are **DISMISSED**.

Dated at Milwaukee, Wisconsin this 23rd day of May, 2025.

BY THE COURT:

_____
NANCY JOSEPH
United States Magistrate Judge