IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

MEGAN HOFFMANN KOLB, as
Personal Administrator
Estate of DEAN HENRY
HOFFMANN, Deceased,

       Plaintiff,

                                        Case No.24-CV-160

v.

KEVIN A. CARR, FORMER SECRETARY, WISCONSIN
DEPARTMENT OF CORRECTIONS; JARED HOY,
SECRETARY, WISCONSIN DEPARTMENT
OF CORRECTIONS; YANA PUSICH, SECURITY
DIRECTOR; DR. KRISTINA deBLANC,
PSYCHOLOGICAL ASSOCIATE; NATHAN PAC,
CORRECTIONAL OFFICER, JOHN DOE #1,
CORRECTIONAL STAFF, JOHN DOE #2,
CORRECTIONAL STAFF, and
RANDALL HEPP , FORMER WARDEN,
WAUPUN CORRECTIONAL in their individual
and official capacities.

## SECOND AMENDED COMPLAINT

       NOW COMES, Plaintiff, Megan Hoffmann Kolb, as the Personal Administrator of the

Estate of Dean Henry Hoffmann, deceased, by and through her attorneys, Lonnie D. Story, of Story

Law Firm, LLC, Stephen P. New and Christopher B. Frost, of Stephen New & Associates, and Jon

E. Stanek of Stanek Law Office for her claims against the Defendants, alleges and states as follows:

## **<u>INTRODUCTION</u>**

1. This is a civil rights action in which Plaintiff, Megan Hoffmann Kolb, as Personal

    Representative for the Estate of Dean Henry Hoffmann, seeks relief and all damages that flow

1

from Defendants' multiple violations of decedent Dean Henry Hoffmann's rights, privileges and immunities as secured by the Eighth Amendment of the United States Constitution pursuant to 42 U.S.C. §1983. Plaintiff also seeks relief for all damages that flow from Defendants' multiple violations of decedent Dean Henry Hoffmann's rights and privileges under Wisconsin Law.

2. Mr. Hoffmann (Plaintiff) died on June 29, 2023 as a result of suicide as a result of Defendants' deliberate indifference to Plaintiff's serious mental health needs while he was incarcerated at Waupun Correctional Institution (Waupun) located in Waupun, Wisconsin.

3. During the period leading up to June 29, 2023, Defendants owed Mr. Hoffmann a duty to provide adequate medical care.

4. During the same period, the Defendants owed Mr. Hoffmann a duty to adequately monitor his mental health status.

5. Defendants owed Henry Dean Hoffmann a duty to protect him from unreasonable dangers while in their custody and care.

6. Prior to Henry Dean Hoffman's death, the State of Wisconsin had requested that the Department of Justice investigate the unsafe and dangerous conditions that existed at Waupun Correctional Institution.

7. At the time of Henry Dean Hoffman's death, Waupun Correctional Institution had a 53% staff vacancy rate.

8. Based upon information and belief Waupun Correctional Institution had been overcrowded for years prior to Henry Dean Hoffmann's death.

9. At the time of Henry Dean Hoffmann's death, the prison population at Waupun had risen to 1,002 inmates, 120 more people than its 882-person capacity

10. Overcrowding and understaffing resulted in the inability of Waupun staff to provide adequate health care services to inmates, including Henry Dean Hoffmann.

11. Based upon information and belief, Defendants Carr and Hoy had a policy or custom of continuing to maintain Waupun Correctional Institution in an overcrowded and understaffed condition, both as to correctional staff and medical personnel.

12. Based upon information and belief, Defendants had a policy or custom of failing to provide adequate food and water to inmates at Waupun.

13. Based upon information and belief, Defendants had a policy or custom of failing to provide proper medical care, including psychological services, to inmates, including Henry Dean Hoffmann.

14. At the time of Henry Dean Hoffmann's death, Defendants knew that the extended lockdown at Waupun was creating an unsafe and dangerous environment for inmates housed there.

15. Investigations following the death of Henry Dean Hoffmann and other inmates at Waupun revealed that state lawmakers, Wisconsin Department of Corrections officials, and Waupun officials had known for years about the unsafe and dangerous conditions that existed at Waupon but took little action to address the problems.

16. Defendants willfully and deliberately ignored their duties, specifically their duties to ensure that inmates, like Henry Dean Hoffmann's civil rights, weren't violated by subjecting them to a prolonged lockdown that resulted in Henry Dean Hoffmann being denied lifesaving medical treatment and care.

17. Defendants' failure to obtain medical/psychological care for Henry Dean Hoffmann resulted in him committing suicide.

3

18. As a result of the known, unsafe and dangerous conditions that existed at Waupun Correctional Institution, former Warden, Randall Hepp, and eight other prison employees were arrested and charged in connection with multiple prisoner deaths at Waupun.

19. Prior to these deaths, Defendants Kevin A. Carr, Jared Hoy, Yana Pusich, Kristina DeBlanc, Nathan Pac, and Randall Hepp were aware of the unsafe and dangerous conditions that existed at Waupun but failed to take corrective action to remedy those conditions.

20. At all times herein, Defendants willfully and deliberately ignored their duties, specifically their duties to ensure Henry Dean Hoffmann had access to mental health medication and treatment.

21. Defendants' willful and deliberate indifference to Henry Dean Hoffmann's mental health resulted in Mr. Hoffmann's suicide.

22. Henry Dean Hoffmann's pleas for help were met with deliberate indifference and dismissal by correctional and medical staff.

23. On behalf of the estate of Henry Dean Hoffmann, as the Personal Representative thereof, Megan Hoffmann Kolb seeks all relief appropriate under Wisconsin state law and all relief allowable resulting from the constitutional violations Defendants inflicted upon Mr. Hoffmann.

24. Plaintiff Megan Hoffmann Kolb also seeks damages for the Estate, including any and all damages recoverable under all applicable state laws, 42 U.S.C. Sections 1983 and 1988, attorney fees and costs, and any further relief deemed proper by this Honorable Court

## JURISDICTION AND VENUE

25. The jurisdiction of the court is invoked pursuant to the Civil Rights Act of 1871, 42 U.S.C. §1983; the Judicial Code, 28 U.S.C. §1331, §1343, and §1391(b); the Constitution of the

4

United States of America; and this Court's supplementary jurisdiction powers pursuant to 28 U.S.C. §1367.

26. Venue is proper in this District under 28 U.S.C.§1391. The parties reside, or at the time the events took place, resided in this judicial district, and the events giving rise to Plaintiff's claims also occurred in this judicial district.

## PARTIES

27. Plaintiff Megan Hoffmann Kolb is the duly appointed Personal Representative of Dean Henry Hoffmann as his daughter.

28. Defendant Kevin Carr is the former Secretary of the WIDOC. Defendant Carr was responsible for the management of the WIDOC, including Waupon.

29. Upon information and belief, Defendant Carr was aware that the lockdown, understaffing, and overcrowding at Waupun were creating an unsafe and dangerous environment for the inmates housed there.

30. Upon information and belief, Defendant Carr was aware that inmates housed at Waupun were being denied access to proper medical care, including psychological services.

31. Upon information and belief, Defendant Carr was aware that during the lockdown, inmates at Waupun were being confined mostly to their cells, which deprived them of fresh air, family visits, clean water, and occasionally safe food to eat.

32. Although Defendant Carr knew about the unsafe and dangerous conditions at Waupun, he failed to take corrective action to ensure that inmates housed there were properly cared for.

33. Defendant Carr resigned as Secretary of the Wisconsin Department of Corrections shortly after the death of Henry Dean Hoffmann.

5

34.  Defendant Jared Hoy is the current Secretary of the WIDOC. At the time of Henry Dean Hoffmann's death, he was second in charge of WIDOC.

35.  Upon information and belief, Defendant Hoy was aware that the lockdown, understaffing, and overcrowding at Waupun were creating an unsafe and dangerous environment for the inmates housed there.

36.  Upon information and belief, Defendant Hoy was aware that inmates housed at Waupun were being denied access to proper medical care, including psychological services.

37.  Upon information and belief, Defendant Hoy was aware that during the lockdown, inmates at Waupun were being confined mostly to their cells, which deprived them of fresh air, family visits, clean water, and occasionally safe food to eat.

38.  Although Defendant Hoy knew about the unsafe and dangerous conditions at Waupun, he failed to take corrective action to ensure that inmates housed there were properly cared for.

39.  Defendant Yana Pusich is the Security Director at Waupun.  Defendant Pusich reviewed Henry Dean Hoffmann's incident report for an event that took place on or about June 20, 2023.

40.  Upon information and belief, Defendant Pusich was aware that the lockdown, understaffing, and overcrowding at Waupun were creating an unsafe and dangerous environment for the inmates housed there.

41.  Upon information and belief, Defendant Pusich was aware that inmates housed at Waupun were being denied access to proper medical care, including psychological services.

42.  Upon information and belief, Defendant Pusich was aware that during the lockdown, inmates at Waupun were being confined mostly to their cells, which deprived them of fresh air, family visits, clean water, and occasionally safe food to eat.

43. Defendant Dr. Kristina deBlanc is a Psychological Associate at Waupun. Dr. deBlanc was responsible for providing mental health services to Mr. Hoffmann prior to his death.

44. Defendant DeBlanc was aware that inmates at Waupun were not receiving proper medical care, including psychological services, yet did nothing to ensure that inmates were receiving the medical care they needed.

45. Defendant Nathan Pac is a Correctional Officer at Waupun. Mr. Pac was involved in the monitoring of Mr. Hoffmann prior to his suicide.

46. Upon information and belief, Defendant Pac was aware that Henry Dean Hoffmann needed medical care but refused to help him.

47. Defendant John Doe #1 is/was a correctional officer or a medical/healthcare provider at Waupun Correctional Institution while Mr. Hoffmann was incarcerated there. John Doe #1 was on duty on the day Mr. Hoffmann died.

48. Defendant John Doe #2 is/was a correctional officer or a medical/healthcare provider at Waupun Correctional Institution while Mr. Hoffmann was incarcerated there. John Doe #2 was on duty on the day Mr. Hoffmann died.

49. Defendants John Doe #1 and John Doe #2 were aware that inmates housed at Waupun were being denied access to proper medical care, including psychological services.

50. Upon information and belief, Defendant John Doe #1 and John Doe #2 ignored Mr. Hoffmann's requests for medical care, which eventually lead to his death.

51. Upon information and belief, Defendants, John/Jane Doe Employees of the Waupun Correctional Institution were always relevant hereto acting under color of state law and acting within the scope of their employment at Waupun Correctional Institution.

52. Defendant Randall Hepp is the former Warden at Waupun.

53. Defendant Hepp, who was the Warden at Waupun Correctional Institution, at the time of Henry Dean Hoffmann's death, was vested with the duties to treat the inmates at Waupun humanely and furnish them with proper food and lodging and confinement, which includes the ministerial duties of summoning necessary medical care of assistance for instances of serious medical need, and who is obligated with the ministerial duty to provide all inmates, including Henry Dean Hoffmann with health care comparable to that available to citizens in the surrounding community. Defendant Hepp was further responsible for the appointment and removal of jail personnel and is liable for the conduct of his staff.

54. Defendant Hepp, by operation of law, had the ministerial duty to train his staff to ensure that policies, including those involving the booking of inmates, supervision of inmates, surveillance of inmates, and the provisions of medical care to inmates, are known and enforced.

55. Defendant Hepp, by operation of law, had the ministerial duty to supervise his staff to ensure the policies, including those involving the bookings of inmates, supervision of inmates, surveillance of inmates, and the provision of medical care to inmates, are known and enforced.

56. Defendant Hepp, by operation of law, had the ministerial duty to exercise reasonable and ordinary care and diligence to prevent unlawful injury to inmates, including Henry Dean Hoffmann, placed in his custody.

## FACTUAL ALLEGATIONS

57. Defendant Wisconsin Department of Corrections ("WIDOC") is an entity run by the State of Wisconsin. The Department states it, "works to protect the public through the constructive

management of those placed in its charge. We offer education, programming, and treatment to persons in our care that enables them to be successful upon returning to the community. Our mission is to achieve excellence in correctional practices while fostering safety for victims and communities."[1]

58. At all times relevant, Defendants were responsible for providing medical and mental health services, treatment, and medication to Mr. Hoffmann while in custody.

59. Defendants were additionally responsible for creating and implementing policies, practices, and protocols that govern the provisions of medical and mental health care to all inmates housed at Waupun

60. Prior to his death, Mr. Hoffmann had a history mental illness, including, but not limited to, bipolar disorder, schizophrenia, depression and anti-social personality disorder. In fact, prior to his trial on charges for which he was subsequently convicted and incarcerated for, he had been deemed by mental health professionals and the court as being mentally ill but competent to stand trial, although there was strenuous disagreement.

61. At DCI, Mr. Hoffmann was categorized as MH-2A, the most severe category of mental illness classification.

62. On or about April 10, 2023, Mr. Hoffmann was transferred to Waupun.

63. Waupun's Purpose Statement alleges, "The purpose of Waupun Correctional Institution (WCI) is to provide inmates, staff, and the public with a safe and secure institution, *while encouraging positive growth and enabling inmates to successfully reenter society*."[2]

---

[1] *Id.*
[2] https://doc.wi.gov/Pages/OffenderInformation/AdultInstitutions/WaupunCorrectionalInstitution.aspx

64.   At all times relevant, Defendant Hepp was responsible for the daily operations of Waupun. This responsibility included the supervision of staff within his institution.

65.   Defendants Carr and Hoy were responsible for ensuring that Defendant Hepp was properly doing his job, and that the inmates under his control and supervision were being properly cared for.

66.   At all times relevant, and based on information and belief, Defendant Pusich was responsible for security classifications at Waupun.

67.   When Henry Dean Hoffmann was transferred to Waupun, approximately thirty (30) days of medication was transferred with him.

68.   Henry Dean Hoffmann arrived to Waupun approximately eleven (11) days post-lockdown initiation at WCI.

69.   In his individual and official capacity, Defendant Hepp implemented a lockdown at Waupun on or about March 29, 2023.

70.   According to prison officials, the lockdown was implemented due to, "some of the institution population breaking rules that are in place to assure everyone's safety." [3]

71.   Reporting in the Milwaukee Journal Sentinel also stated, "More than half of the staff positions at Waupun are unfilled, while the prison is housing 120 more people that its 882-person capacity." [4]

72.   Upon his arrival to Waupun, Mr. Hoffmann was never given a psychological exam due to the lockdown restrictions that were in place upon his arrival.

---

[3] https://www.jsonline.com/story/news/2023/11/02/heres-what-you-need-to-know-about-the-waupun-prison-lockdown/71400906007/

[4] *Id.*

73. When Henry Dean Hoffmann arrived to Waupun, he wrote a request to staff stating he had not been given any of his medication.

74. Based on information and belief, Henry Dean Hoffmann was not receiving all of his prescribed medications immediately upon his arrival at Waupun. Additionally, he was a diabetic and received three cold meals daily.

75. On or about May 5, 2023, Henry Dean Hoffmann told his family he had only been able to use the phone twice during his, then, twenty-six (26) days at Waupun.

76. In one phone call, guards unplugged the phone on Henry Dean Hoffmann while he was in the middle of a conversation.

77. On or about May 18th, 2023, a note in Henry Dean Hoffmann's file stated he had not been seen by mental health services due to the modified movement at Waupun in place at the time.

78. Henry Dean Hoffmann had consistently and continuously asked for medical treatment and was displaying serious symptoms of mental illness, including but not limited to severe anxiety, paranoia, pressured speech, poor judgment, poor insight, loss of appetite, weight loss and insomnia.

79. Henry Dean Hoffmann's frustration came to an apparent head on or about June 20, 2023.

80. After taking a shower, Henry Dean Hoffmann refused to go back into his cell.

81. Correctional Officer Reynolds informed Sergeant Schuett that, "Hoffman [*sic*] said he was being threatened by his cellmate and that he was told he could either claim suicidal or refuse to lock in by his cellmate, and that his cellmate was stealing property from him."

82. In Sergeant Schuett's report he goes on to state, "I called the supervisors office and informed Captain Pawylyk of the situation, and then proceeded to talk with Inmate Hoffman [*sic*]."

83. After Mr. Hoffmann refused to go back into his cell citing "fear of his safety because of threats his cellmate made to him," Mr. Hoffmann was ordered back into his cell by Sergeant Schuett.

84. Henry Dean Hoffmann again refused citing concerns for his safety.

85. Instead of Waupun staff addressing the threats made to Henry Dean Hoffmann or acknowledging his lack of safety returning to his cell, he was handcuffed and escorted to the Restricted Housing Unit.

86. Wis. Stat. §302.40 states, "For violating the rules of the jail, an inmate may be kept in solitary confinement, *under the care and advice of a physician*, but not over 10 days. (Emphasis added.)

87. There is no evidence any required medical and/or mental health paperwork was ever filled out during Mr. Hoffmann's stay in solitary confinement.

88. When WIDOC Staff make placement into Temporary Lock Up (TLU), Staff "shall complete DOC-67 at the time of placement." DOC 1024, DAI Policy #303.00.03, I.D.[5]

89. The information contained on DOC-67 includes: Reason(s) for placement, *Mental health code*, and other items. *Id.*

90. Based on information and belief, the DOC-67 form was not filled out.

91. Defendants, who should have been aware of Henry Dean Hoffmann's mental health issues, placed him in solitary confinement for a minor incident despite Henry Dean Hoffmann expressing concerns for his safety.

92. All TLU placements "shall" be reviewed within two working days. *Id.* at E.1.

---

[5] https://doc.wi.gov/DepartmentPoliciesDAI/3030003.pdf

93. According to subparagraph (1), "The review *shall* include consultation with PSU staff regarding placement and conditions of confinement if the PIOC [Persons in Our Care] has a mental health code of MH-2A, MH-2B, or ID." *Id.* (Emphasis added).

94. Additionally, DOC 1024, DAI Policy #308.00.01, Serious Mental Illness (SMI) is defined as MH-2A or MH-28 mental health codes. [6]

95. Henry Dean Hoffmann was categorized as MH-2A, the most severe category of mental illness classification during his intake.

96. Based on information and belief, Henry Dean Hoffmann's TLU report was <u>not</u> reviewed within two business days.

97. While confined in solitary confinement, Henry Dean Hoffmann began to rapidly deteriorate mentally and physically.

98. On or about June 24, 2023, a nurse observed Henry Dean Hoffmann in his solitary confinement cell.

99. Only a visual check was done with still no report of a psychological exam being done during Henry Dean Hoffmann's time at Waupun.

100. On or about June 26, 2023, Henry Dean Hoffmann reportedly requested Depakote after being frustrated with the frequency of the administration of his medicine.

101. Based on information and belief, and according to Mr. Hoffmann's family, he was not administered medications on a consistent basis.

102. Specifically, Mr. Hoffmann's family noted that his nighttime medications were administered in the morning.

---

[6] https://doc.wi.gov/DepartmentPoliciesDAI/3080001.pdf

103. Additionally, some medication distribution was marked as "refused" in a medication log when it may or may not have ever been offered.

104. According to an inmate near Mr. Hoffmann, Henry Dean Hoffmann was telling staff, including the psychiatrist for "2-3 days" before his suicide that he was "hearing voices," and "couldn't sleep." In addition to these statements, he asked staff for his prior mental health medication, Depakote, which was never provided.

105. According to the same inmate, Henry Dean Hoffmann informed Waupun staff that the voices he was hearing told him to kill himself.

106. Based on information and belief, Henry Dean Hoffmann never received any mental health care despite him displaying behaviors indicative of an individual in a mental health crisis.

107. Defendant Nathan Pac reportedly heard Henry Dean Hoffmann's complaint and informed him, "he didn't care," or words to that effect, if Mr. Hoffmann was to kill himself.

108. On or about June 27, 2023, one week after Henry Dean Hoffmann was put in solitary confinement, Defendant Pusich reviewed the incident report from June 20, 2023.

109. Defendant Pusich additionally described the incident on June 20, 2023 as creating "a risk of serious disruption at the facility or community."

110. In the review, Defendant Pusich checked the box of "Psychological services input for serious mentally ill inmate."

111. There is no record of Henry Dean Hoffmann receiving any psychological services while in solitary confinement, even though Defendant Pusich checked the box of "Psychological services input for serious mentally ill inmate."

112. On or about June 28, 2023, Henry Dean Hoffmann was served a bag dinner. He ate part of it.

113. On or about June 29, 2023, Henry Dean Hoffmann was observed visually by a guard at approximately 5:09 am.

114. Another guard walked by his cell at approximately 6:21 am.

115. Video evidence shows when passing the cell at 6:21 am, the guard failed to open the food trap door to obtain a visual of Henry Dean Hoffmann while in his cell.

116. At approximately 6:45 am, Henry Dean Hoffmann was found deceased.

117. The guard that found Henry Dean Hoffmann failed to wear a body camera during his shift.

118. When Henry Dean Hoffmann was discovered, guards reported him being cold and pale.

119. Mr. Hoffmann was cut down, put in restraints, and then removed from his cell.

120. Approximately seven (7) minutes after being discovered, guards called 911.

121. Upon arrival of other guards, chest compressions were allegedly started at 6:48 am.

122. Emergency Medical Services (EMS) arrived to Henry Dean Hoffmann's cell approximately nineteen minutes *after* he was discovered in his cell.

123. Mr. Hoffmann was intimated at approximately 7:14 am.

124. At approximately 7:25 am, EMS called Mr. Hoffmann's time of death.

125. Based upon information and belief, photos from Henry Dean Hoffmann's cell show the partially eaten bagged dinner previously provided on or about 4:22 pm on June 28th, 2023.

126. The bagged dinner being present shows Henry Dean Hoffmann's garbage was not picked up anytime between 4:22 pm on June 28th, 2023 and the morning of his passing.

127. Mr. Hoffmann was left in his cell until approximately 8:45 am when the Dodge County Medical Examiner arrived at his cell.

128. Three days after Henry Dean Hoffmann's passing, Defendant. deBlanc wrote a report regarding her June 26th interaction with Mr. Hoffmann.

## APPLICABLE LEGAL STANDARDS

129. Plaintiff re-alleges and incorporates by reference, as if fully set forth herein, all the allegations contained in the above paragraphs of the Complaint.

130. Defendants have a duty to inmates to provide adequate and appropriate safety measures and medical care to ensure that those people to whom they assign this duty are appropriately providing care to incarcerated people, and they breached this duty owed to Henry Dean Hoffmann.

131. Defendants acted with deliberate indifference by failing to provide Henry Dean Hoffmann with constitutionally required medical care, by failing to correct the unsafe and dangerous conditions at Waupun and by failing to supervise the actions/inactions of their employees, representatives and agents, that lead to Henry Dean Hoffmann' death

132. Defendants' negligent and reckless actions/inactions lead to the death of Mr. Hoffmann.

133. Defendants are not entitled to qualified immunity under §1983 or state law because (1) they violated a federal or constitutional right of Henry Dean Hoffmann and (2) the unlawfulness of their conduct as it pertained to Mr. Hoffmann was clearly established at the time of his injuries. *Reichle v. Howards*, 566 U.S. 658, 664 (2012). Further, Defendants acted in a fraudulent, malicious, and/or oppressive manner and/or violated Henry Dean Hoffmann's clearly established rights.

134. As is detailed herein, under the Eighth Amendment to the U.S. Constitution, there is clear evidence that there was deliberate indifference to the serious medical needs and safety needs of Mr. Hoffmann by Defendants.

16

135. As is detailed below, Plaintiff clearly establishes a violation for deliberate indifference to the serious medical needs and safety needs of Mr. Hoffmann as it is legally inferred that the Defendants failed to respond to Mr. Hoffman's known psychological and medical needs.

**COUNT I- EIGHTH AMENDMENT VIOLATIONS UNDER 42 U.S.C. § 1983**

136. Plaintiff re-alleges and incorporates by reference, as if fully set forth herein, all the allegations contained in the above paragraphs of the Complaint.

137. Defendants, while acting under color of law and within the scope of their employment, violated the Eighth Amendment right of Mr. Hoffmann to be free from cruel and unusual punishment. Specifically, the conduct of Defendants by refusing to provide Mr. Hoffmann with proper psychological/medical care was a violation of multiple standards applicable to correctional facilities and was the proximate cause and/or contributing factor to the injuries suffered by Mr. Hoffmann, resulting in his death.

138. The actions of Defendants, described hereinabove, violated the constitutional rights guaranteed to Mr. Hoffmann, under the Eighth Amendment to the United States Constitution by depriving him of basic human necessities, that is, adequate protection and medical treatment, constituting cruel and unusual punishment.

139. Defendants imposed and/or permitted these conditions despite said conditions not being reasonably related to any legitimate non-punitive governmental or penological objective.

140. Defendants were deliberately indifferent to the health, safety, and other basic needs of Mr. Hoffmann, as described hereinabove, by having actual knowledge of such conditions and deliberately taking no action to remedy them in a timely, reasonable, or appropriate manner.

141. Defendants likewise exhibited supervisory indifference or tacit authorization of the misconduct of subordinates and the constitutional injuries committed by said subordinates.

142. Defendant had actual or constructive knowledge that their subordinates were engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury and Defendants' response to said knowledge was so inadequate as to show deliberate indifference or tacit authorization of these constitutional injuries.

143. The actions of Defendants, described hereinabove, were not taken in good- faith, were objectively unreasonable, and were in violation of clearly established law.

144. During the time at issue, it was clearly established that the serious deprivations of basic human needs, including safety and medical treatment at Waupun, as described hereinabove, violated the Eighth Amendment to the United States Constitution.

145. The actions of Defendants, described hereinabove, deliberately injured Mr. Hoffmann in a way unjustified by any governmental interest.

146. The actions of Defendants described herein, shock the conscience.

147. The actions of Defendants described herein, were unlawful and unjustified.

148. As a direct and proximate result of Defendants' unlawful, unjustified, and unconstitutional actions, Mr. Hoffmann suffered a deprivation of his Constitutional rights and physical harm, and Plaintiff will seek compensatory and nominal damages for, inter alia, physical pain and discomfort; and the physical effects of delayed medical treatment resulting in Mr. Hoffmann's death.

149. In addition to these compensatory damages, the Plaintiff will also seek to recover, under 42 U.S.C. § 1988, attorneys' fees and cost incurred during this litigation.

150. The actions of the Defendants were reprehensible, willful and wanton, malicious, and in blatant disregard for the rights owed to Mr. Hoffmann, thereby justifying an award of punitive damages, to the extent such damages are recoverable under the applicable insurance policy(s).

## COUNT II -GROSS NEGLIGENCE

151. Plaintiff re-alleges and incorporates by reference, as if fully set forth herein, all the allegations contained in the above paragraphs of the Complaint.

152. The actions and/or inactions of the Defendants described herein were grossly negligent, careless, and reckless and subjects them to liability to Plaintiff under Wisconsin law, as stated herein above.

153. Defendants owed a duty to Mr. Hoffmann to provide reasonable safety and reasonable medical care, including, but not limited to observation, and Defendants breached their duties.

154. As a direct and proximate result of said breaches, Mr. Hoffmann suffered, and Plaintiff will seek to recover the damages as alleged herein.

## COUNT III - NEGLIGENT HIRING

155. Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

156. At all times relevant hereto, Defendants owed inmates at Waupun, including Mr. Hoffmann, a duty to not hire employees and place them in position of power and authority where they can cause serious harm or injuries to others.

157. Upon information and belief, Defendants did not conduct a reasonable investigation into the background of their Employee Defendants and did not adequately assess the possible risk

of serious harm or injury to third-parties that could result from the conduct of their Employee Defendants if they were employed at Waupun.

158. Upon information and belief, Defendants' employees had a history of prior grossly negligent acts and misconduct, including but not limited to, neglect, cruel and unusual punishment and the unnecessary and wanton infliction of pain; and deliberate indifferent to, and willfully ignoring, the health, safety, and serious medical needs of inmates.

159. Upon information and belief, had the Defendants conducted a reasonable investigation into the background of their Employee Defendants, they would have discovered that their Employee Defendants had a history of grossly negligent acts and misconduct.

160. Upon information and belief, had the Defendants conducted a reasonable investigation into the background of their Employee Defendants, their grossly negligent acts described herein could have been prevented.

161. Defendants violated clearly established rights and/or laws with respect to the hiring of its Employee Defendants, evidencing a deliberate indifference to Mr. Hoffmann's rights.

162. As a direct and proximate result of the Defendants' grossly negligent conduct, Mr. Hoffmann suffered severe bodily injury, conscious pain and suffering, and an untimely death. The Plaintiff seeks to recover all damages permitted under the law, including but not limited to, all damages recoverable under Wisconsin state law.

163. The actions of the Defendants were reprehensible, willful and wanton, malicious, and in blatant disregard for the rights owed to Mr. Hoffmann.

164. The Defendants' reprehensible, willful and wanton, malicious conduct and blatant disregard for the rights owed to Mr. Hoffmann justify an award of punitive damages, to the extent such damages are recoverable under the applicable insurance policy(s).

## COUNT IV- NEGLIGENT SUPERVISION AND TRAINING (STATE LAW CLAIM)

165. Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

166. It is well established that Wisconsin recognizes the tort of negligent supervision and training. *See Miller v. Wal-Mart Stores, Inc.*, 580 N.W.2d 233 (1998).

167. At all times relevant hereto, Defendants owed inmates at Waupun, including Mr. Hoffmann, a duty of care.

168. Defendants owed inmates at Waupun, including Mr. Hoffmann, a duty to supervise and train their employees, especially those in positions of power and authority, to prevent them from acting in a grossly negligent manner and causing serious harm or injuries to others properly and adequately.

169. Upon information and belief, the Defendants' employees were not properly or adequately supervised at Waupun.

170. Upon information and belief, the Defendants' employees were not properly or adequately trained at Waupun.

171. Upon information and belief, the Defendants' grossly negligent supervision and training of their Employee Defendants allowed them to freely commit the grossly negligent and reckless acts described herein.

172. Upon information and belief, had the Defendants properly and adequately supervised and trained their Employee Defendants, their grossly negligent and reckless acts described herein could have been prevented.

173. The Defendants violated clearly established rights and/or laws with respect to the supervision and training of their Employee Defendants.

174. As a direct and proximate result of the Defendants' grossly negligent and reckless conduct, Mr. Hoffmann suffered severe bodily injury, conscious pain and suffering, and an untimely death. Plaintiff will seek to recover all damages permitted under the law, including but not limited to, all damages recoverable under the Wisconsin wrongful death statute. WI Stat § 895.04 (2023).

175. The actions of the Defendants were reprehensible, willful and wanton, malicious, and in blatant disregard for the rights owed to Mr. Hoffmann, thereby justifying an award of punitive damages, to the extent such damages are recoverable under the applicable insurance policy(s).

## COUNT V - NEGLIGENT RETENTION

176. Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

177. At all times relevant hereto, the Defendants owed inmates at Waupun, including Mr. Hoffmann, a duty of care.

178. The Defendants owed inmates at Waupun, including Mr. Hoffmann, have a duty to not negligently retain unfit employees, especially those in position of power and authority, who have engaged in grossly negligent, reckless, or otherwise wrongful conduct.

179. Upon information and belief, the Defendants' employees had a history of prior grossly negligent, reckless acts and misconduct, including but not limited to, neglect, cruel and unusual punishment and the unnecessary and wanton infliction of pain; and deliberate

indifference to, and willfully ignoring, the health, safety, and serious medical needs of inmates.

180. Despite these grossly negligent and reckless acts, as described herein, the Defendants' employees were retained.

181. Upon information and belief, the Defendants knew or should have known that their Employee Defendants were unfit but retained them anyway.

182. Upon information and belief, the Defendants could have reasonably foreseen the possible risk of harm or injury to others that could result from the conduct of their unfit Employee Defendants.

183. Upon information and belief, had the Defendants not negligently retained their Employee Defendants, their grossly negligent and reckless acts described herein could have been prevented.

184. The Defendants violated clearly established rights and/or laws with respect to the retention of their Employee Defendants.

185. As a direct and proximate result of the Defendants' grossly negligent and reckless conduct, Mr. Hoffmann suffered severe bodily injury, conscious pain and suffering, and an untimely death. The Plaintiff seeks to recover all damages permitted under the law, including but not limited to, all damages recoverable under Wisconsin law.

186. Defendants' actions were reprehensible, willful and wanton, malicious, and in blatant disregard for the rights owed to Mr. Hoffmann, thereby justifying an award of punitive damages, to the extent such damages are recoverable under the applicable insurance policy(s).

## WAIVER OF GOVERNMENTAL IMMUNITY AND PUNITIVE DAMAGES

187. Plaintiff re-alleges and incorporates by reference, as if fully set forth herein, all the allegations contained in the above paragraphs of the Complaint.

188. The conduct of Defendants, described herein above, including their flagrant disregard of Mr. Hoffmann's medical needs, and failure to protect, was willful, wanton, reckless, fraudulent, oppressive, and outrageous under any definition of those terms.

189. Accordingly, there is no immunity for an executive official whose acts are fraudulent, malicious, or otherwise oppressive. In this matter, the Defendants conduct has been fraudulent, malicious and/or oppressive.

190. As to Defendants, there is no immunity, cap on damages, or other tort damage limitation applicable to Plaintiff's claims, including, but not limited to, punitive damages and all other forms of damages available to Plaintiff against any non-governmental entity.

**WHEREFORE**, Plaintiff, individually and on behalf of the Estate of Henry Dean Hoffmann requests that the Court:

a)  Award all compensatory damages allowed by law;

b)  Award punitive damages, where applicable;

c)  Award attorney's fees and costs incurred during the course of this litigation, pursuant to 42 U.S.C. § 1988;

d)  Grant any and all relief Plaintiff may be entitled to in law or equity; and

e)  Any further relief this Honorable Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**


**PLAINTIFF**
**By counsel,**

24

   /s/ *Christopher B. Frost*
Christopher B. Frost (WVSB No. 9411)
STEPHEN NEW & ASSOCIATES
430 Harper Park Drive
Beckley, WV 25801
Ph: (304) 250-6017
Fax: (304) 250-6012
cfrost@newlawoffice.com

And

Lonnie D. Story, Esq. (Wis. Bar #1121459)
STORY LAW FIRM, LLC
732 N. Halifax Ave., #301
Daytona Beach, FL 32118
Ph: (386-492-5540
lstorylaw@gmail.com

Jon E. Stanek
STANEK LAW OFFICE
State Bar No. 1056151
901 Fourth Street, Suite 282
Hudson, WI 54016
Tel: (715) 379-0744
Email: jon@staneklawoffice.com